United States v. Ceasar United States v. America U.S. Congressman Thomas J. Wilson Good morning, your honors. Colleen Cassidy for Ramirez-Caesar. May it please the court. The district court erred in denying Caesar's motion to withdraw her plea to failure to appear, which she made before sentencing, because she had pled guilty without a factual basis. That is, she had pled guilty to an offense that she did not commit. Caesar pled guilty to an offense that she did not commit. She neither committed nor admitted the crime charged, which is under 1831-46. It punishes one who, having been released under Chapter 207, knowingly fails to appear as required by the conditions of release. Caesar was not released under Chapter 207. Instead, she'd been released by the BOP to the supervision of a probation officer under Chapter 229. Well, could you address the plea agreement waiver in which she says that she waived the right to raise on appeal or on collateral review any argument that the admitted conduct does not fall within the scope of the statutes? Why doesn't that cover your argument? Why? Because first, under the controlling precedent of this circuit, Adams holds that this kind of claim is not waived by a plea agreement, by a plea agreement waiver of appeal, that this court must review, despite a waiver, a claim that there is no factual basis for the plea, that the plea is legally invalid, that it is, that the defendant is legally innocent. But she, she said specifically that the admitted conduct does not fall within the scope of the statutes, that any kind of argument to that effect is waived. So. And that, that, but that waiver is not, is not a bar to review under Adams. That Adams holds that a plea waiver of this issue is not, does not bar review. And also she didn't, she, the plea agreement did not waive any right to, to challenge, to move to withdraw the plea. That, in fact, that was contemplated in the plea agreement, which had, which stipulated the statute of limitations would be, would not bar, would not, would not apply if the plea were vacated or withdrawn. So what she did was she moved to withdraw before sentencing. And now she's appealing that denial of the sentence. It's not just, it's not just a case. It's a case of outright forfeiture, essentially. I mean, counsel raised during plea negotiations that Cesar may not have been released on bail and in, in the colloquy between the two lawyers, it was discovered it was to her client's advantage to go forward under this statute rather than the obstruction statute, which would have had a higher maximum penalty. Okay. So there actually was no advantage to that. That, that's, that's just a kind of misdirection. I looked at the guidelines and the guidelines are actually a little bit higher for failure to appear than obstruction of justice. And failure to appear requires a mandatory consecutive sentence, which obstruction does not. So there was no advantage gained. Why this, this was dropped, I don't know. I could be speculating that the government's theory was, was accepted at the time, because in any event, she was pleading guilty to the VOSR covering the same conduct, and so probably, you know, would not be sentenced additionally for the same conduct. I mean, maybe, I don't know. I don't know. I don't know why it was dropped, but it shouldn't matter. Whatever counsel was thinking, there's no evidence that this, that Cesar was aware of this issue at all. Nothing was said about this in the plea colloquy. And Cesar pled guilty only to being on supervised release and knowingly failing to appear, even if the lawyers somehow, you know, had some other idea or dropped the ball or whatever, the court under, under Rule 11 still must ensure that the plea had a factual basis and that the defendant pled guilty to the offense charged, that is what Rule 11 is for. In fact, in Adams, counsel was, you know, had, had allowed Adams to plead guilty to a cocaine conspiracy when he only committed a marijuana conspiracy. But this court, regardless of what the lawyers allowed and the lawyers did in that case, this court said that the district court has to look at the record of the plea itself and, and find that it has a factual basis. And if it lacks a factual basis for the element of the crime charged, the district court should have allowed the plea to be withdrawn. And this is, this goes back to McCarthy, the Supreme Court case, which says we don't, this is what Rule 11 is for. We don't have to look at anything else, what the motivations were or what people were thinking. We simply have to look at the plea itself, the plea proceeding, and see if it established the elements of the crime. And it did not. Cesar pled guilty to being on supervised release and, and failing to appear. Well, what about the district court's analysis, looking at Rule 32, 1A6 and, and interpreting that to create a binary. If there was a true, there was something had to happen at that proceeding, the defendant was going to be released or detained, and either way, it was going to be under the Bail Reform Act by operation of that rule. Whatever Rule 32 says, those protocols were not followed. And, and in any event, it doesn't, it's not a binary. First of all, Cesar, there was not even a summons. She was not detained even for a minute. This was all done via just a, a report by probation. There was a video conference. There was no discussion of detention, bail. She was not detained or held in any way to be released. So under Rule 32, I, my reading of Rule 32, which wasn't followed in any event, it just wasn't followed as a factual matter. So there's no operation. You can't fill in an element, a factual element of the offense, the event of release by operation of law. Number one. But number two, even under Rule 32, it says this applies to people who are either summons or detained, and you can either release or detain. But it doesn't say that's the only thing you can do. For example, if there is no summons and no one is detained, they're just in a conference, there's no release. There's no, there's no mechanism of release. There was no release order. But a person is summoned to court because of a violation. And so it seems to me on that, something, that's an important event. If summoned or brought to court on an arrest and the court has to make a determination, isn't that a determination made under the Bail Reform Act? Well, that didn't happen. What I'm saying is that didn't happen. I understand you're saying they didn't talk about the Bail Reform Act and apply the clear and convincing standard. None of that happened. But wasn't that what they were doing? There wasn't a summons or warrant either. There was just an appearance scheduled by videoconference. It was during the pandemic protocols. And so she wasn't detained by the court at all. She was not detained to be released. But wasn't she under the court's supervision? Because she was basically awaiting resentencing after the vacation. Yeah, she was under the court's supervision in some way, but the statute is specific. The statute says you have to have been released under this chapter. And she had, in fact, been released because she had finished her sentence and she'd been released to supervised release. So the elements of the crime weren't established. And the elements of the crime can't be filled in by some kind of vague, well, you know, she was under the court's supervision in some way. She should have been, this should have happened, that should have happened. So we're going to say after the fact that by operation of law, it did happen. This is an element of the offense. Whether that might be, that methodology might be fine for some other analysis. It's not for filling in the elements of the offense. I would also like to address the delay in prejudice. First of all, the government never claimed prejudice below. So it's not the court's role under the case we cited in Gardner. It's not the court's role to fill in the prejudice claim on behalf of the government. Now the government says, well, they would have to, you know, try the case, you know, three years later, but the case involves court records, business records, Caesar's own statements, testimony of law enforcement. If they could, they probably can't make this case because there's no way they can, they can establish the element of released under Chapter 207. But whatever else they wanted to bring, the case is not something that is going to be hard to prove no matter how many years have gone by. And as I said, they didn't claim it below. And finally, the delay, the court considered the delay from the plea to the withdrawal, the motion to withdraw, but there was a big intervening event that triggered this motion, and that was the probation department's motion to withdraw its VOSR allegations. That changed everything. It not only changed the argument that the government had for why this even qualified as a Chapter 207 release, because it eliminated the violations that were the predicate for that, but it also changed the whole picture because if Caesar was not serving a sentence anyway on the VOSR, then this failure to appear count really mattered, and there was a good, a motivation for making the motion. Again, the Gardner case from the First Circuit says that the delay time should run when there's an intervening circumstance from the date of that circumstance that changed the motivation, that created the motivation to withdraw the plea. Because this delay is not about the government's prejudice. They have no prejudice. It's about, you know, why did they take so long? Well, they took so long because suddenly the VOSRs were going to be withdrawn, and the whole picture changed. So that was the reason for the delay. And finally, in all of the cases that the government cites involving a delay, the delay is an also ran. The main thing in those cases, the main point, is that there was no just reason for the plea withdrawal in each of those cases that the government cites in its brief. Schmidt, Doe, Overton, the main issue was that the defendant did not make out a reason to withdraw the plea. There was no legal innocence. There was no lack of a factual basis. And in a case where there is, like someone who stands convicted and is serving a three-year consecutive sentence for a crime that she did not commit, delay should not be a reason on its own for affirming that. Thank you, Ms. Cassidy. We'll hear from the government. Okay. Thank you. Good morning, and may it please the Court. My name is Andrew Reich, and I represent the government in this case, and I represented the government in the resentencing proceedings below. Both of Cesar's challenges on appeal lack merit, and this Court should reject them. First, Cesar plainly waived her challenge to her conviction, both explicitly in her plea agreement and when she identified the very issues she now raises on appeal, but decided not to pursue them in exchange for a sentencing benefit. They are, in any event, meritless. The district court — And the adversary says this morning that there was no sentencing benefit. Your Honor, there is no doubt that the statutory maximum sentence would have been higher had she pled guilty to one of the other offenses that the government offered, and instead she chose, for whatever reasons, to plead guilty instead to the failure to appear offense. In any event, Your Honor, the district court did not abuse its discretion in denying Cesar's late filed motion to withdraw her plea because, among other reasons, Section 3146 plainly applies to her conduct. Could you talk about the notion that she was failing to appear, having been released under this chapter? What exactly was the order or the moment that she was released under the chapter? Absolutely, Your Honor. Cesar was released under Chapter 207 for three separate reasons that this court could find. She was released under Chapter 207 following her violation of supervised release, also pending the government's appeal of her sentence, and also pending her resentencing after the court — But was there a moment when the court decided she was to be released? Yes, Your Honor. So this was the status, that that's what she was after a vacay tour of the sentence? Thank you. Yes, absolutely, Your Honor. When she appeared on her — following her violation of supervised release at the November 20, 2020, arraignment, and that's at Appendix 56, Your Honor, the court absolutely made a determination to release her on conditions, knowing that she was on supervised release already. That release was necessarily a release under Chapter 207 because, as many courts have decided, Chapter 207 is the only way to release a defendant, particularly one who has been convicted of an offense. And this court in Fernandez reaffirmed the fact that Section 3143 not just allows a choice, but in fact mandates detention following a supervised release. I'm sorry, did you say November? I'm a little confused on the dates now. Yes, Your Honor. Her arraignment on her first violation of supervised release was November 20, 2020. And it was at that time that the court released her, that creates one of three separate grounds to find that she was released under Chapter 207. But what should we make of the effect of the vacay tour of the original sentence? Because doesn't that vacay also the supervised release and therefore the violation? Your Honor, that plays no role here for two reasons. The first reason is that as Cesar herself conceded before the district court, and this is at Appendix 124, her original sentence was not actually vacated until the mandate issued from this court. And that had not happened at the time of her failure to appear on August 25, 2021. And this court has set that rule out in Simmons and elsewhere. The second point, Your Honor, is that even if that wasn't the case, even if you accept that the underlying sentence was vacated, that plays no role in the court's ability to obligate Cesar to show up to court. There is no doubt that she failed to appear no matter what that conference was about. The court was permitted to make that order and Cesar was bound to follow it. And so the vacay tour of her sentence below plays no role here. Because the district court had kind of a continuing supervisory role pending issuance of the mandate, notwithstanding the vacay tour of the original sentence. Your Honor, at the time that she was arraigned on the first violation of supervised release, the Second Circuit had yet to vacate the underlying sentence. So at that time, she was released. I'm just trying to make sure I understand the effect of the vacay tour even before the mandate issued. You're saying it doesn't have any effect at all until the mandate issues in November of 2021. That's correct, Your Honor. Your Honor, I want to, Your Honors, I want to go back to the waiver point. The waiver in the plea agreement here was absolutely explicit. And it's important to understand that there were two waivers. There was not just the waiver of her appellate rights in the general sense, but there was a specific waiver. She agreed not to argue on appeal that the admitted conduct does not fall within the scope of the statutes. And that's in the appendix at 151 to 52. And that's exactly the argument she now presses before this Court. And I think that cases such as Inree's sealed case out of the D.C. Circuit or even the Hines case from this Court are instructive on that. And she argues that there's no language in the plea agreement precluding what we have here, a motion to withdraw the plea before sentencing. Is it an appeal from that? Your Honor, whether or not she was permitted to move to withdraw her plea, that's not the question before the Court now. The question before the Court now is whether she was permitted to appeal her sentence and whether she was able to — whether she was permitted to press the argument that she now presses before the Court that her admitted conduct didn't fall within the scope of the statutes. Both of those things are precluded by the waivers in her plea agreement. And it doesn't matter that the posture happens to be on an appeal of a denial to withdraw her guilty plea. And I think that the Adams case is distinguishable. And I think that it's inapposite here for two reasons. One, it's important to understand that in the Adams case, they were dealing with this more generalized appellate waiver. They were not dealing with the very specific waiver that we have here, that the admitted conduct does not fall within the scope of the statute. And in fact, if Adams says that even in the face of such a waiver, a defendant can appeal the sentence and that the waiver is no longer applicable, then that specific type of waiver would never stand. And every challenge of that particular issue would be a Rule 11 challenge that allows a defendant to circumvent the waiver in the plea agreement. That cannot be the case. That was what was bargained for here, and that's been upheld by many other courts. The second reason that Adams is distinguishable is because Adams no doubt states that if the plea proceeding itself has a defect, if there is a Rule 11 defect in the plea proceeding, that that might invalidate the waiver provision. But that is not what happened here. The plea proceeding here was proper and complete. Caesar's allocution was proper and complete, and there was no Rule 11. And this Court has a Rule 11 defect. And this Court has warned against laundering claims through Rule 11 in order to avoid a clear waiver in a plea agreement. And that, Your Honor, is what has happened here. There's also the more generalized waiver, of course. As Your Honors already observed, her counsel specifically raised the very issues she now raises on appeal. And that's not only — that's two separate issues. That's not only the issue of 3146 and its application to Caesar's conduct, but it's also the issue about the vacator of her underlying sentence. They raised both those issues with the government prior to her plea. They nevertheless chose to proceed with the plea. And when the judge at the plea proceeding asked if there were any defenses or any issues, they squarely responded no. There wasn't anything put into the record about the applicability of the Bail Reform Act that she had been released under the Bail Reform Act? No, Your Honor. That was not stated explicitly on the record during the plea. However, the judge did ask defense counsel whether they saw any reason why she might not be able to — Why isn't that — why isn't that a problem for you? Your Honor, the elements of Section 3146 were met in the allocution. Caesar allocated that she knew she was supposed to appear in court and that she didn't appear and that she had been released on conditions. But it's an element, a circumstance that has to be shown that somebody is released under the Bail Reform Act, right? Your Honor, that's a legal question. As a matter of factual allocution, Caesar did not have to allocate that she was released under Chapter 207. Indeed, certainly no defendant can be expected to know the intricacies of the law. Caesar knew that she was released on conditions and that she failed to appear. And that was more than enough to meet the factual requirements under Rule 11. Your Honor, I see my time is coming to — Your Honors, I see my time is coming to an end. And so I just want to reiterate that under both the waiver issue and the substance, these challenges to the District Court's decision lack merit entirely. The District Court did not err. It did not abuse its discretion in declining to grant Caesar's motion to withdraw her plea. And this Court should affirm it in its entirety. And, in fact, this Court should dismiss the challenge to her conviction. Just a few responses. Responding to Judge Livingston's question about did the government offer anything at the plea, the answer is no. Sorry, did the government? Offer any basis for this release under Chapter 207 at the plea? No. In fact, Caesar admitted in her statement of her conduct that she had been released on unsupervised release. She was released on supervised release, which is not Chapter 207. That's the 229 release. And that she willfully failed to appear. But you're not arguing that she needed to allocute? That she needed to understand what she was pleading guilty to and that there needed to be a factual basis. So could the government have filled that in? There could have been a discussion of that. There was none. If there had been — and this is my point. Okay. After the allocution, the Court asked a few questions. None of that said anything about release under the Bail Reform Act. The Court asked the government if it had anything to add. And the government said no. The government preferred to leave it vague because if it had tried to clarify, it would have become clear that there was no release. Because it couldn't be established. The factual basis could not be established for that because there had been no release under Chapter 207. And if you look at the — at A84, which is the arraignment on the VOSR, which was done by video conference, again, with no summons, the Court said, just continue to report to your probation officer. There was no discussion of, I'm letting you stay out now. I'm releasing you. Nothing like that. There was simply no release by this Court. She was already released. And then on the offer, the — what the government calls the offer of obstruction and obstruction count, as I said, there would be no advantage to taking failure to appear over that if it had been offered. But it wasn't an offer. It was something that was tossed out in an email. Well, we could charge obstruction. There are several sections of obstruction. There was no — no offer with a specific section of obstruction of justice. And it's not clear, just looking through the sections at 1509 at SEC, that any of them would even apply to this behavior, to this conduct. So there was no actual offer. We don't know what happened. The record is just empty as to what happened after that short email thread. So we can't really speculate about it. And finally, the mandate issue is a red herring. Under LIPSCOMB, the supervised release violations occurred even before the mandate came down, and they were held to be null and void. But I also would like to just very briefly remind the Court that there is —  So what, in fact, was — they were null and void as of the moment that the — our Court vacated the sentence. Is that what you're saying? Right. Right. And so was she then free to go wherever she wanted and just depart? Theoretically, she was, but — Wasn't she, in fact, awaiting resentencing? She was. There was a remand to the district court for resentencing purposes, is that right? Well, there wasn't — there was a remand to the district court, but the government asked that she be arrested and remanded, and the Court did — denied that and said, no, we'll just see you at the regularly scheduled conference, which we have scheduled for August 25th. So was it your position that she — the vacate to her was basically essentially for conviction as well? Of her sentence. Because otherwise, if she — of her sentence. Yes. And so was she free then to depart the country? You're saying she wasn't detained? Well, no, she couldn't have departed the country. She — I mean, she didn't even have a passport. I mean, they took away her passport. I'm talking from a legal perspective. She was not. I understand you to be saying she was subject to no restraints at all. Well, she was still at that time technically under supervised release, but — and her supervised release, you know, hadn't been vacated yet. If it — once it was vacated, though, everything that flows from that is a nullity under the Lipscomb case. In any event, that — that whole theory of how the VOSR automatically converted her release by the BOP into a Chapter 207 release, we argue, is just — is not valid. That's — that's not — this — the historical event of whether she was released under Chapter 207 can't be just filled in by some kind of legal fiction. That's our — that's our primary argument. But I also would like to just remind the Court that I have the second — the second point we raised, that the 3147 count must be vacated on basically double jeopardy grounds. The government didn't even respond to that in its brief, but the Supreme Court's new decision in Barrett is really controlling here. If there's not a very clear statement — a clear statement of — it doesn't matter if the plain language covers it. If there's not a clear statement that Congress intended for anyone who violates the failure-to-appear statute to be additionally punished for the same conduct consecutively under 3147, that — that double punishment cannot occur, and that must be vacated. Thank you. I will take the matter under advisement. Thank you both.